**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: 1:20-cv-01689-STV

FELIKS OBERTMAN, on behalf of himself and all others similarly situated,

    Plaintiff,

v.

FRONTIER AIRLINES, INC.;

    Defendant.

---

**FRONTIER AIRLINES, INC.'S MOTION TO DISMISS**

---

Defendant Frontier Airlines, Inc. ("Frontier") moves to dismiss Plaintiff's Complaint for failing to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and for lack of standing pursuant to Rule 12(b)(1). Frontier moves to dismiss the Complaint because Plaintiff: (i) fails to state a claim for breach of contract; (ii) brings a lawsuit preempted by federal law; (iii) lacks standing to pursue injunctive relief; and (iv) is precluded by Frontier's Contract of Carriage ("Contract") from recovering attorney's fees incurred during litigation.

### I.    INTRODUCTION & FACTUAL BACKGROUND

As a result of the devastating impact of the COVID-19 pandemic, and like many air carriers, Frontier was forced to significantly reduce its flights due to drastically lower consumer demand. These measures also necessitated the cancellation of many flights. Dkt. No. 1, Compl. ¶¶ 11-12. When passengers book travel aboard Frontier, they become bound by its Contract, which

outlines the airline's obligations to its passengers in a variety of situations. *Id.* ¶ 30, Ex. A § 18.[1] Plaintiff concedes the Contract governs the parties' relationship. *Id.* ¶¶ 30-36, 48-54. The Contract specifies that when Frontier cancels a flight, it must either attempt to re-accommodate the passenger on another Frontier flight, and if it is unable to do so and the passenger makes a specific request, refund the unused portion of the fare to the passenger's original method of payment. *Id.* ¶¶ 32, 33, Ex. A. If a passenger does not specifically request a refund, or if a passenger cancels their travel *before* Frontier cancels that flight, the passenger is *not* entitled to a refund. *Id.*

Plaintiff, a California resident, alleges that on March 17, 2020—in the midst of Coronavirus emerging as a national concern—he purchased two roundtrip tickets for a May 8, 2020, Frontier flight from Sacramento, California to Denver, Colorado. *Id.* ¶¶ 20, 24. He purchased his tickets **after** the World Health Organization's March 11, 2020 declaration of COVID-19 as a pandemic, and the March 16, 2020, announcement of "shelter-in-place orders" by "seven counties in the San Francisco, California area." *Id.* ¶¶ 3-7. Plaintiff then bought a third roundtrip ticket for the same flight on March 21, 2020, *id.* ¶ 25, **after** California's governor's March 19, 2020 issuance of a mandatory stay-at-home order barring non-essential travel for all Californians. *See* https://www.gov.ca.gov/2020/03/19/governor-gavin-newsom-issues-stay-at-home-order/.

On March 23, 2020, Frontier emailed Plaintiff to advise that the May 8, 2020, flight was now canceled and he would be rebooked. On March 31, 2020, Frontier emailed him to advise that he was rebooked on a May 10, 2020, flight from Sacramento to Denver. *Id.* ¶¶ 26, 27. He alleges

---

[1] The Complaint attaches a version of the Contract that post-dated Plaintiff's alleged March 2020 ticket purchases. *See* attached Declaration of David Ross ("Ross Dec."), **Exhibit 1**. Few changes exist between these versions. To the extent the versions are the same as to a provision discussed herein, Frontier solely references the version attached to the Complaint, and to the extent they differ, Frontier explains the difference herein.

2

he contacted Frontier, requested a refund, and Frontier informed him his options were to accept the rebooked flight or credit for future travel, and he accepted the credit. *Id.* ¶ 28.

Plaintiff includes one cause of action, breach of contract, on behalf of himself and a putative nationwide class of Frontier passengers. *Id.* ¶¶ 50-54. Plaintiff seeks injunctive relief and to recover his attorney's fees. *Id.* ¶ 12, Prayer for Relief. Plaintiff's recovery is barred on the four corners of his Complaint alone and his Complaint should be dismissed in its entirety.[2]

## II.     APPLICABLE LEGAL STANDARDS

A Rule 12(b)(6) motion to dismiss permits courts to terminate lawsuits that are fatally flawed in their legal premises and destined to fail, sparing litigants the burdens of unnecessary pretrial and trial activity. *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989). "A district court should grant a motion to dismiss if plaintiffs have not pled 'enough facts to state a claim to relief that is plausible on its face.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of elements of a Cause of Action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). A plaintiff must allege facts sufficient to "nudge his claims…across the line from conceivable to plausible." *Id.* at 683. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 570. Mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citations omitted). A motion to dismiss under Rule 12(b)(1) tests standing to ensure the constitutional limitation of federal court jurisdiction to actual cases or controversies. *Simon v. Eastern KY Welfare Rights Organization*, 426 U.S. 26, 41-42 (1976). Where a plaintiff

---

[2] Several factual inconsistencies exist between Plaintiff's allegations and Frontier's records that also preclude Plaintiff's recovery. Frontier reserves the right to raise these issues if any aspect of this case survives dismissal.

seeks injunctive relief, he must demonstrate a real and immediate threat of future injury to satisfy the injury in fact requirement. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102-04 (1983).

### III.   ARGUMENT

#### A.   Plaintiff's Complaint Fails to State a Claim for Breach of Contract

Plaintiff fails to sufficiently plead a breach of contract claim for two independently dispositive reasons: (1) Frontier performed under the contract; and (2) Plaintiff sustained no damages. The elements of breach of contract are: (1) existence of a contract; (2) performance by the plaintiff; (3) non-performance by the defendant; and (4) damages. *Tatten v. Bank of Am. Corp.*, 912 F. Supp. 2d 1032, 1041 (D. Colo. 2012). Setting aside the first two elements for the purposes of this Motion, Plaintiff's own factual allegations show that Frontier met its obligations under the Contract by offering to rebook Plaintiff on a later flight; and since Plaintiff accepted a credit for future air travel from Frontier, he is unable to show that he sustained any damages as a result of any alleged non-performance by Frontier. For these reasons, Plaintiff fails to state a claim.

##### 1.   Frontier Performed Under the Contract

Notwithstanding Plaintiff's allegations that Frontier breached the Contract – specifically § 18 B, C, and E, his factual allegations and attached Contract demonstrate that Frontier satisfied its contractual obligations. Frontier cancelled his flight as permitted under the Contract and offered to rebook him on a flight two days later in compliance with its obligations under the Contract. Compl. ¶¶ 24-29, Ex. A § 18 C, E. He declined Frontier's offer of rebooking and instead accepted a credit for future travel with Frontier. *Id.* ¶ 28. Under the Contract, Frontier had no obligation to provide a refund under these circumstances or because Plaintiff declined his rebooking opportunity. *Id.* at § 18 C, E (requiring in event of cancelation that Frontier provide a flight to the

4

passenger's original destination, and only requiring a refund if Frontier cannot do so, and limiting Frontier's liability to this process). The breach of contract claim fails because Frontier performed under the Contract when it offered him the option to rebook his flight and ultimately provided him an accepted credit, as alleged in the Complaint.

Pursuant to the Contract, Colorado law governs this dispute. *Id.* at § 22 J ("This Contract of Carriage will be governed by and construed in accordance with the laws of the United States of America and the State of Colorado without regard to conflict of law principles or law"). Under Colorado law, contract interpretation is a question of law for a court to decide. *Spring Creek Exploration & Prod. Co., LLC v. Hess Bakken Invs. II*, LLC, 887 F.3d 1003, 1017 (10th Cir. 2018). "The primary goal of contract interpretation is to determine and effectuate the intent and reasonable expectations of the parties." *Id.* at 1018. "To determine the intent of the parties, the court should give effect to the plain and generally accepted meaning of the contractual language." *Id.* A court "should be wary of viewing clauses or phrases in isolation . . . instead reading them in the context of the entire contract, seeking to harmonize and to give effect to all provisions so that none will be rendered meaningless." *Id.* (internal quotations and citations omitted). "On a motion to dismiss, allegations in a complaint do not overcome contradictory statements in the text of a contract attached to the complaint." *Id.* (internal quotations and brackets omitted).

Plaintiff alleges that § 18 is the operative Contract section for this lawsuit, but he bases his entire case on the erroneous assertion that the terms set forth in § 18 required Frontier to provide him a refund for the cost of his cancelled flight. This is simply inaccurate. Section 18 governs situations where there is a failure to operate on schedule or a failure to carry. Compl., Ex. A § 18. Section 18 has four relevant subsections: A – Liability Limited, B – Force Majeure, C – Delay,

5

Misconnection, or Cancellation, and E – Schedule Change Prior to Day of Travel. *Id.* These subsections address Frontier's obligations in the event of a cancellation or schedule change.[3]

        **i.**        **Section 18 A – "Liability Limited" Demonstrates that Plaintiff Had No Guarantee for Transportation on his Ticketed Flight**

Pursuant to § 18 A of the Contract, "Frontier will use reasonable efforts to transport passengers . . . to the purchased destination, but published schedules, flight times . . . and similar details set forth in the ticket or Frontier's published schedules are not guaranteed and form no part of this Contract of Carriage." Compl., Ex. A § 18 A. "Frontier may . . . change schedules, delay or cancel flights . . . as required by its operations in Frontier's sole discretion." *Id.* "Frontier's obligations for failure to operate any flight, failure to operate a flight according to its schedule, or for changing the schedule . . . with or without notice to the passenger are set forth [in § 18 B-F]." *Id.* The gravamen of Plaintiff's Complaint is that he was entitled to either transportation on his booked flight or a refund – anything else was a breach of the Contract. Frontier was specifically permitted pursuant to § 18A, at its sole discretion, to cancel Plaintiff's flight and rebook his flight pursuant to § 18 B-F. Plaintiff had no absolute contractual right to a refund in the event his flight was cancelled.

        **ii.**        **Section 18 C - Delay, Misconnection, or Cancellation Allows for Rebooking of Plaintiff on a Later Flight and a Refund is not Required Under these Circumstances**

---

[3] Frontier does not take the position that one of these subsections takes precedent over the other under the facts pled in the Complaint. Frontier expressly reserves the right to argue that one or more of the § 18 subsections apply or do not apply based on the evidence. But, for the purposes of this Motion, Frontier addresses all the potentially relevant subsections to show that Frontier complied with all of the terms of § 18 of the Contract based on the facts pled by Plaintiff.

Section 18 C controls in the event of a cancellation. Compl., Ex. A § 18 C. It provides in pertinent part: "In the event . . . a passenger's flight is cancelled . . . Frontier will provide transportation on its own flights at no additional charge . . . . ***If Frontier cannot provide the foregoing transportation***, Frontier shall, if requested, provide a refund for the unused portion of the passenger's ticket in lieu of the transportation under the foregoing. The foregoing shall be the limit of Frontier's liability for the matters covered by this provision." *Id.* (emphasis added). Here, Plaintiff alleges that Frontier offered to rebook him on another flight, but he refused and demanded a refund. Compl. ¶¶ 26-28. Since Frontier was able to provide transportation on its own flights (and offered to do so), Frontier was not obligated to provide a refund under the plain language of § 18 C, despite Plaintiff demanding such a refund. Offering to rebook Plaintiff on a later flight and ultimately providing him a credit for future travel was the limit of Frontier's obligations under the Contract in the event of a cancellation. As such, Frontier performed under the Contract and Plaintiff's claim for breach of contract fails.

### iii.      Section 18 E - Schedule Change Prior to Day of Travel

For schedule changes, § 18 E in effect when Plaintiff purchased his tickets provides:

When a passenger's itinerary is changed because of a modification in Frontier's schedule, arrangements will be made to:

1)   Transport the passenger over its own route system to the destination; or

2)   In the event the schedule modification is significant, at Frontier's discretion, it may refund the cost of the unused portion of the ticket.

Ross Dec. Ex. 1 § 18 E. The language under § 18 E of the Contract attached to the Complaint (effective April 2020) is slightly different and provides in relevant part that "[i]n the event Frontier

7

936696v.2

determines that the schedule modification is significant, Frontier shall, if requested, provide passengers a refund of the cost of the unused portion of the ticket." Compl., Ex. A § 18 E.

Under either version, Frontier has complied with the Contract. Plaintiff admits that a later Frontier flight was available and Frontier offered a rebooking on that flight, scheduled to depart on May 10, 2020 just two days after Plaintiff's original May 8, 2020 flight. Compl. ¶¶ 26-28. Frontier met its contractual obligations and was never required to refund the costs of Plaintiff's ticket when he refused the rebooking. Additionally, Plaintiff does not allege that his May 10, 2020 flight constituted a "significant" "schedule modification." Even if Plaintiff had alleged a significant change occurred, Frontier had the discretion, not the mandatory obligation, to offer a refund and it chose to rebook Plaintiff as permitted by the Contract. Compl., Ex. A § 18 C, E; Ross Dec. Ex. 1 § 18 C, E. Likewise, Plaintiff cannot prove a breach of contract because he does not allege that Frontier deemed the change was significant to warrant a refund. Moreover, Frontier met its obligations under the Contract by offering to rebook Plaintiff on a later flight. Thus, the allegations in the Complaint show there was no breach.

    **iv.   Frontier Has No Obligation to Provide a Refund Under the § 18 B Force Majeure Provision Because that Provision is Harmonized with All of § 18**

With respect to *force majeure* circumstances, § 18 B provides that Frontier may cancel any flight without liability "except to provide a refund for the unused portion of the ticket." Compl., Ex. A § 18 B. This provision must be read in harmony with the rest of the Contract in general and the other subsections of § 18 specifically. "When interpreting a contract, [the court's] task is to give effect to the intent of the parties." *Bledsoe Land Co. LLLP v. Forest Oil Corp.*, 277 P.3d 838, 842 (Colo. Ct. App 2011) (internal quotations omitted); *Nat'l Union Fire Ins. Co. v. Fed. Ins. Co.*,

8

734 Fed. Appx. 586, 589 (10th Cir. 2018) ("[W]e must interpret a contract in its entirety with the end in view of seeking to harmonize and to give effect to all provisions so that none will be rendered meaningless."). "The intent of the parties to a contract is to be determined primarily from the language of the instrument itself." *Bledsoe Land Co. LLLP*, 277 P.3d at 842. "That language must be examined and construed in harmony with the plain and generally accepted meaning of the words used, and reference must be made to all the agreement's provisions." *Id.*

When § 18 B is read in harmony with the rest of § 18, it is clear that there is no requirement for an automatic refund in the event of a *force majeure* (assuming *arguendo* that *force majeure* even applies in the context of Frontier's flight cancellations related to the Coronavirus pandemic). This Court has to look to § 18 C and E, which govern cancellations and schedule changes respectively. As addressed above, Frontier is only obligated to provide a refund when it cannot provide transportation on a different flight. Compl., Ex. A § 18 C, E; Ross Dec. Ex. 1 § 18 C, E. Read in harmony, the language "without liability except to provide a refund" in § 18 B refers to instances where Frontier cannot provide the rebooking referenced in § 18 C and E. Stated otherwise, the requirement to provide a refund in § 18 B sets the outer limits of Frontier's liability in the event of a *force majeure*. It does not set the minimum obligation of Frontier as made clear when read in conjunction with § 18 C and E.

To read the refund language of the *force majeure* provision in isolation would render § 18 C and E meaningless whenever a *force majeure* event required a cancellation or schedule change. Those subsections allow rebooking and do not require a refund unless: (1) a rebooking is not available; (2) any change is determined to be significant; and (3) the passenger requests a refund. Compl., Ex. A § 18 C, E; Ross Dec. Ex. 1 § 18 C, E. Under Colorado law, a contract is interpreted

9

in its entirety and so that no provision will be rendered meaningless. *Nat'l Union Fire Ins. Co.*, 734 Fed. Appx. at 589. As such, this Court should read any refund requirement under § 18 B in the context of the accompanying contractual obligation of providing rebooking and then only a refund if and when rebooking is not possible.

> **v.  Plaintiff's Allegations Concerning the DOT Notice and Frontier's Customer Service Plan Have No Bearing on the Breach of Contract Dispute**

The references to the United States Department of Transportation's Office of Aviation Enforcement and Proceedings Notice ("DOT Notice") and Frontier's Customer Service Plan are immaterial. First, Plaintiff's breach of contract cause of action solely references § 18 of the Contract. Compl. ¶ 49. Second, the Customer Service Plan provides that all travel is "subject to the terms of the Contract of Carriage." Compl., Ex. 2, Customer Service Plan § 9. Third, Plaintiff does not allege that the Customer Service Plan is incorporated into the Contract. Fourth, U.S. Department of Transportation guidance is not enforceable in a private action. *See American Airlines, Inc. v. Wolens*, 513 U.S. 219, 222 (1995). Fifth, Plaintiff has not alleged that the Contract is ambiguous so as to allow extrinsic evidence. *See Fort Lyon Canal Co. v. High Plains A&M, LLC*, 167 P.3d 726, 729 (Colo. 2007). The Contract does not require a refund under the factual allegations in the Complaint. Frontier has performed its contractual obligations and Plaintiff's breach of contract claim must be dismissed.

### 2.  Plaintiff Did Not Sustain Any Damages

Even if Frontier had failed to perform under the Contract, Plaintiff's breach of contract claim is deficient because he does not adequately allege that he sustained any damages. As alleged in the Complaint, Frontier offered to rebook Plaintiff on a later flight once his original flight was

cancelled. Compl. ¶¶ 24-29. Plaintiff admits he declined Frontier's offer of rebooking and instead demanded a refund to which he was not entitled under the plain language of the Contract. Compl. ¶ 28, Ex. A § 8 C, E; Ross Dec. Ex. 1 § 18 C, E. Ultimately, he accepted a credit for future flight travel, which precludes his sustaining actionable damages. Compl. ¶ 28.

"In general, contract law espouses three distinct, yet equally important, theories of damages to remedy a breach of contract: expectation damages, reliance damages, and restitution damages." *Spring Creek Exploration & Prod. Co., LLC*, No. 17-1010, 2018 U.S. App. LEXIS 9803, *44 (10th Cir. Apr. 10, 2018). "The root purpose of a contract remedy is to place the plaintiff-promisee in as good a position as it would have occupied had the defendant-promisor not breached the contract." *Id.* (internal quotations and brackets omitted). "In an action for breach of contract, expectation damages are the norm." *Id.* (citing *Smith v. Farmers Ins. Exch.*, 9 P.3d 335, 337 (Colo. 2000) (In a breach of contract action, "a plaintiff may recover the amount of damages necessary to place him in the same position he would have occupied had the breach not occurred.")).

Here, the alleged bargained for exchange was "for provision of air travel in exchange for payment." Compl. ¶ 50. When Plaintiff's flight was cancelled, Frontier offered him another flight, which he declined. *Id.* ¶¶ 24-29. As a result, Frontier offered him the credit for future flight travel – which meets the requirements of the bargained for exchange, *i.e.* air travel in exchange for payment. The fact that Plaintiff did not travel on his originally scheduled flight is of no consequence because, pursuant to the Contract's terms, "the published schedules, flight times . . . and similar details set forth in the ticket or Frontier's published schedules are not guaranteed and form no part of this Contract of Carriage." Compl., Ex. A § 18 A; Ross Dec. Ex. 1 § 18 A. With the acceptance of the credit, Plaintiff sustained no damages and cannot prove an essential element

of a breach of contract under Colorado law. *Tatten*, 912 F. Supp. 2d at 1041 (noting that damages are an element of a breach of contract claim). Therefore, his claim fails independent of whether Frontier performed under the Contract.

### 2. Plaintiff's Claims Are Preempted by the Airline Deregulation Act

To the extent Plaintiff's breach of contract claim attempts to rely upon, or must be adjudicated with reference to any external law or policy, his claim is barred by the doctrine of federal preemption and cannot proceed. The Airline Deregulation Act of 1978 ("ADA") contains an express preemption clause, precluding states from enacting or enforcing "a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(1); *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378 (1992). A claim relates to rates, routes, or services, within the meaning of the ADA, if the claim "has a connection with, or reference to, airline rates, routes, or services." *Id*. Courts have defined "airline rates" as matters involving the cost of air transportation from the origin to the destination. *Charas v. Trans World Airlines, Inc.*, 160 F.3d 1259, 1265 (9th Cir. 1998).

A narrow exception to ADA preemption exists for breach of contract claims seeking to recover "solely for the airline's alleged breach of its own, self-imposed undertakings." *Wolens*, 513 U.S. at 227-28. Where a plaintiff attempts to use laws or policies external to the parties' contract to enlarge or enhance the parties' bargain, however, ADA preemption bars the breach of contract claim from proceeding. *Id.* at 233 (courts are confined, "in breach-of-contract actions, to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement"). *See also Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 289 (2014) (holding ADA preemption applies where plaintiff uses an external law to enlarge his rights under a contract).

If a breach of contract claim cannot be adjudicated without resort to external law or policies, the claim is preempted by the ADA. *See*, *e.g.*, *Smith v. Comair, Inc.*, 134 F.3d 254, 257 (4th Cir. 1998) (dismissing plaintiff's breach of contract claim on ADA preemption grounds because the claim could not be adjudicated without reference to federal laws external to the parties' agreement); *Boon Ins. Agency, Inc. v. Am. Airlines, Inc.*, 17 S.W.3d 52, 58-59 (Tex. App. 2000) (dismissing plaintiff's breach of contract claim on ADA preemption grounds, *inter alia*, because the claim could not be adjudicated without reference to state laws external to the parties' agreement); *Howell v. Alaska Airlines, Inc.*, 99 Wn. App. 646, 994 P.2d 901, 905 (Wash. Ct. App. 2000) (dismissing plaintiff's breach of contract claim on ADA preemption grounds because the claim could not be adjudicated without reference to state laws external to the parties' agreement).

At the outset, Plaintiff's Complaint involves refunds for air transportation. It therefore cannot be reasonably disputed that the Complaint falls within the scope of "rates" for ADA purposes. Further, while Plaintiff's lone cause of action is breach of contract, he cannot escape ADA preemption to the extent his claim seeks to rely on or reference, or must be adjudicated with reference to, any external law or policy. The Complaint references, on multiple occasions, the DOT Notice. In citing the DOT Notice, Plaintiff is seeking to enlarge the obligations voluntarily undertaken by the parties through the Contract by bringing in an external document, and his claim is therefore preempted. Further, to the extent that the breach of contract claim cannot be adjudicated without reference to that external policy, or to the law upon which the DOT Notice is based, Enhancing Airline Passenger Protections, 76 Fed. Reg. 23110-01, at 23129 (Apr. 25, 2011), the claim is preempted. Thus, to the extent that the breach of contract claim is not limited to the terms of the parties' Contract, the claim is preempted by the ADA and must be dismissed.

13

### B. Plaintiff Lacks Standing to Pursue Injunctive Relief Because He Does Not Allege Any Risk of Future Injury

If Plaintiff's breach of contract claim could somehow survive dismissal, Plaintiff cannot pursue injunctive relief as a remedy as he lacks standing to do so because the relevant allegations in the Complaint are deficient. The "requirement that a plaintiff allege a risk of future injury in order to obtain injunctive relief is a constitutional requirement that all plaintiffs must satisfy." *Atik v. Welch Foods, Inc.*, 2016 U.S. Dist. LEXIS 136056, *6 (E.D.N.Y. Sept. 30, 2016). That is, to "satisfy the threshold requirement imposed by Article III" a plaintiff seeking injunctive relief must demonstrate a likelihood of future injury. *Lyons*, 461 U.S. at 108. Moreover, the "fact of past injury does not confer standing to seek prospective injunctive relief without some credible threat of future injury." *Id.*; *Winsness v. Yocum*, 433 F.3d 727, 735 (10th Cir. 2006). To establish standing to pursue injunctive relief, a plaintiff must also demonstrate "a sufficient likelihood" of encountering some future harm. *Lyons*, 461 U.S. at 109, 111 (despite plaintiff having standing to pursue damages, he did not have standing to pursue injunctive relief).

Here, Plaintiff's reference to injunctive relief is limited to Paragraph 47 of his Complaint and is deficient in almost every regard. Most glaring, however, is Plaintiff's lack of any allegation that he will be injured or harmed in the future. Plaintiff must plead this threshold requirement to pursue injunctive relief, and it is missing from the Complaint entirely. Nowhere in the Complaint does Plaintiff plead that he will, for instance, travel on Frontier again in the future. Even assuming, *arguendo*, Plaintiff actually was harmed in the manner he alleges he was, the Complaint is devoid of any indication that such harm will occur again in the future. As a result, Plaintiff lacks standing to seek injunctive relief. Based upon Plaintiff's allegations in the Complaint, assuming they can proceed and are proven, Plaintiff's recovery is limited to economic damages only. Consequently,

Plaintiff's request for injunctive relief must be dismissed from the Complaint.

### C. The Contract Precludes any Attorney's Fees

Plaintiff is not entitled to recover attorney's fees. The Contract provides that "Frontier is not liable for any indirect, special, or consequential damages arising out of or resulting from transportation provided, delay in transportation, or any failure to provide transportation." Compl., Ex. A § 16 A. Further, § 18 provides that the limit of liability (under certain circumstances not present here) is the refund of a ticket when rebooking is not possible. Compl., Ex. A § 18 C, E; Ross Dec. Ex. 1 § 18 C, E.

"As a general rule, in the absence of any contractual or statutory liability therefor, attorney fees and expenses of litigation of a plaintiff's claim are not recoverable as an item of damages either in a contract or a tort action." *Lawry v. Palm*, 192 P.3d 550, 568 (Colo. Ct. App. 2008) (internal brackets omitted). "However, if attorney fees are sought based on a contractual agreement to award fees to the prevailing party, they should be treated as costs, at least where the fee-shifting contractual provision is not the subject of the dispute between the parties and the contract itself is proved to exist." *Id.* "If attorney fees are part of the substance of a lawsuit and are sought as a legitimate consequence of the tort or breach of contract sued upon, they are damages." But, "when a party claims it has incurred attorney fees as foreseeable damages arising from a breach of contract, such fees are considered special damages, which must be pleaded in the complaint pursuant to C.R.C.P. 9(g)." *Id.* at 569. *See also* Fed. R. Civ. P. 9(g) (same). "In the absence of allegations that the pleader is entitled to attorney's fees, therefore, such fees cannot be awarded." *Id.* A complaint's request for attorney fees in a general prayer for relief does not plead special damages. *Id.* Here, the Contract does not provide for attorney's fees as costs or damages and they

15

are not a substantive part of the breach of contract claim. Plaintiff only includes an attorney's fees request in his prayer for relief. Consequently, he has failed to plead attorney's fees as special damages under Rule 9(g), and any such recovery is also precluded by the Contract. Accordingly, if the Complaint survives dismissal, this Court should dismiss the request for attorney's fees.

## IV.   CONCLUSION

For the foregoing reasons, Frontier respectfully requests that the Court dismiss Plaintiff's Complaint with prejudice pursuant to Rule 12(b)(6) and Rule 12(b)(1).

<u>Statement Regarding Oral Argument</u>: Oral argument is requested, to the extent a hearing will assist this Court in evaluating the arguments submitted.

DATED this 17th day of June, 2020.

Respectfully submitted,

WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP

By: /s/ Jason D. Melichar
Jason D. Melichar, Esq.
R. Joseph Isert, Esq.
1225 17th Street, Suite 2750
Denver, CO 80202
(303) 572-5300
(303) 573-5301 (fax)
jason.melichar@wilsonelser.com
joe.isert@wilsonelser.com

William J. Katt, Esq.
740 N. Plankinton Avenue, Suite 600
Milwaukee, WI 53203
(414) 276-8816
(414) 276-8819 (fax)
william.katt@wilsonelser.com

Patrick J. Kearns, Esq.
401 West A Street Suite 1900
San Diego, CA 92101
(619) 321-6200

(619) 321-6201 (fax)
patrick.kearns@wilsonelser.com


David M. Ross, Esq.
1500 K Street, NW, Suite 330
Washington, D.C. 20005
(202) 626-7660
(202) 628-3606 (fax)
david.ross@wilsonelser.com

*Attorneys for Defendant Frontier Airlines, Inc.*

17

## CERTIFICATION OF COUNSEL

Frontier's counsel certifies that on June 16, 2020, counsel for Frontier conferred with Plaintiff's counsel regarding the relief sought in this Motion, and did not obtain consent to the relief requested herein.

By: /s/ Jason D. Melichar
Jason D. Melichar, Esq.

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of June 2020, a true and correct copy of the foregoing was filed with the Court and served via CM/ECF on the following:

| | |
|---|---|
| Hassan A. Zavareei, Esq.<br>Annick Marie Persinger, Esq.<br>TYCKO & ZAVAREEI LLP<br>1828 L Street NW, Suite 1000<br>Washington, DC 20036<br>Telephone: (202) 973-0900<br>Facsimile: (202) 973-0950<br>Email: hzavareei@tzlegal.com<br><br>Jeff Ostrow, Esq.<br>Jonathan M. Streisfeld, Esq.<br>Joshua R. Levine, Esq.<br>Daniel Tropin, Esq.<br>KKOPELOWITZ OSTROW FERGUSON WEISELBERG GILBERT<br>1 West Las Olas Blvd. Suite 500<br>Fort Lauderdale, FL 33301<br>Telephone: (954) 525-4100<br>Facsimile: (954) 525-4300<br>Email: streisfeld@kolawyers.com<br>ostrow@kolawyers.com<br><br>*Counsel for Plaintiff* | Melissa S. Weiner, Esq.<br>PEARSON, SIMON & WARSHAW, LLP<br>800 LaSalle Avenue, Suite 2150<br>Minneapolis, Minnesota 55402<br>Telephone: (612) 389-0600<br>Facsimile: (612) 389-0610<br>Email: mweiner@pswlaw.com<br><br>Daniel L. Warshaw, Esq.<br>PEARSON, SIMON & WARSHAW, LLP<br>15165 Ventura Boulevard, Suite 400<br>Sherman Oaks, CA 91403<br>Telephone: (818) 788-8300<br>Facsimile: (818) 788-8104 |

By: /s/ Jason D. Melichar
Jason D. Melichar, Esq.

936696v.2