**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: 1:20-cv-01689-STV

FELIKS OBERTMAN, on behalf of himself and all others similarly situated,

    Plaintiff,

v.

FRONTIER AIRLINES, INC.,

    Defendant.

---

**FRONTIER AIRLINES, INC.'S MOTION TO STRIKE
PURSUANT TO FED. R. CIV. P. 23(c)(1)(A) and (d)(1)(D)**

---

Defendant Frontier Airlines, Inc. ("Frontier") by and through undersigned counsel, moves to strike the class allegations contained in Plaintiff's Complaint pursuant to Fed. R. Civ. P. 23(c)(1)(A) and (d)(1)(D).

## I.    INTRODUCTION & FACTUAL BACKGROUND

Frontier moves to strike the Complaint's class allegations because: (i) Plaintiff's class action claims are barred by Frontier's Contract of Carriage ("Contract"); (ii) Plaintiff's factual allegations make clear that individual issues will predominate, precluding Plaintiff from meeting his burden of demonstrating that common questions predominate; and (iii) the class definition includes class members who do not have standing. These deficiencies warrant striking all of the class allegations in the Complaint.

This lawsuit arises from Plaintiff's purchase of tickets for air travel on Frontier. Like many United States air carriers, in response to COVID-19, Frontier was forced to reduce its flying

significantly as a result of drastically lower consumer demand. Dkt. No. 1, Compl. ¶ 11. This reduction in operations necessitated the cancellation of many of its flights. *Id.* ¶ 12. When passengers book travel aboard Frontier, they become bound by its Contract, which outlines the airline's obligations to its passengers in a variety of situations. *Id.* ¶ 30, Ex. A § 18.[1] That Contract specifies that when Frontier cancels a flight, it must either attempt to reaccommodate the passenger on another Frontier flight, and if unable to do so and the passenger so requests—refund the unused portion of the passenger's fare to the passenger's original method of payment. *Id.* ¶¶ 32, 33, Ex. A. If a passenger does not specifically request a refund, or if a passenger cancels a trip *before* Frontier cancels the passenger's flight, the passenger is *not* entitled to a refund. Ex. A § 18.

Plaintiff, a California resident, alleges that on March 17, 2020, he purchased two roundtrip tickets for a May 8, 2020 flight from Sacramento, California to Denver, Colorado. *Id.* ¶¶ 20, 24. He alleges he purchased his tickets **after** the World Health Organization's March 11, 2020 declaration of COVID-19 as a pandemic, and the March 16, 2020 announcement of "shelter-in-place orders" by "seven counties in the San Francisco, California area." *Id.* ¶¶ 3-7. Plaintiff alleges he bought a third roundtrip third ticket for the same flight on March 21, 2020, *id.* ¶ 25, **after** California's governor's March 19, 2020 issuance of a mandatory stay-at-home order barring non-essential travel for all Californians. *See* https://www.gov.ca.gov/2020/03/19/governor-gavin-newsom-issues-stay-at-home-order/. Plaintiff does not allege whether his ticket purchases were

---

[1] The Complaint attaches a version of the Contract that post-dated Plaintiff's alleged March 2020 ticket purchases. *See* attached Declaration of David Ross ("Ross Dec."), **Exhibit 1**. Few changes exist between these versions. To the extent the versions are the same as to a provision discussed herein, Frontier solely references the version attached to the Complaint, and to the extent they differ, Frontier explains the difference herein.

pretext purchases merely designed to manufacture a lawsuit against Frontier.²

On March 23, 2020, Frontier emailed Plaintiff to advise that the May 8, 2020, flight was now canceled and he would be rebooked. On March 31, 2020, Frontier emailed him to advise that he was rebooked on a May 10, 2020, flight from Sacramento to Denver. *Id.* ¶¶ 26, 27. He alleges he contacted Frontier, requested a refund, and Frontier informed him his options were to accept the rebooked flight or credit for future travel, and he accepted the credit. *Id.* ¶ 28.

Plaintiff includes one cause of action, breach of contract, on behalf of himself and a putative nationwide class of Frontier passengers. *Id.* ¶¶ 50-54. Plaintiff defines his putative class as "[a]ll persons in the United States who purchased tickets for travel on a Frontier Airlines flight scheduled to operate from March 1, 2020 through the date of a class certification order, whose flight(s) were canceled by Frontier, and who were not provided a refund." *Id.* ¶ 37. Plaintiff excludes from the proposed class, *inter alia*, "any person who was reaccommodated and transported to their ticketed destination by Defendant or its agents." *Id.* ¶ 38. For the reasons listed above and as described in detail below, Plaintiff's class allegations must be stricken from his Complaint.³

## II.   APPLICABLE LEGAL STANDARDS

Rule 23(c)(1)(A) directs that "[a]t an early practicable time after a person sues or is sued

---

² Plaintiff is also the named plaintiff in a product liability putative class action filed in December 2019 against Electrolux Home Care Products, Inc. in the United States District Court for the Eastern District of California, No. 19-cv-01164. Plaintiff is represented in that case by the law firm of Bursor & Fisher, P.A., which is also representing the plaintiff in a putative class action case filed in May 2020 against Frontier that also involves the alleged failure to provide refunds for Defendant's flights that were canceled as a result of the COVID-19 pandemic, *Young v. Frontier Airlines*, No. 20-cv-1153 (D. Colo).

³ Frontier has today filed a Motion to Dismiss showing that Plaintiff's Complaint must be dismissed pursuant to Rule 12(b)(1) and (6). The instant Motion to Strike is filed in the event that any portion of the Complaint survives Frontier's Motion to Dismiss.

3

as a class representative, the court must determine by order whether to certify the action as a class action." "Sometimes the issues are plain enough from the pleadings" to determine whether class claims are appropriate. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982); *Stearns v. Select Comfort Retail Corp.*, No. 08-2746, 2009 U.S. Dist. LEXIS 112971, *45 (N.D. Cal. Dec. 4, 2009) ("it is procedurally proper to strike futile class claims at the outset of litigation to preserve time and resources"). Further, under Rule 23(d)(1)(D), the court may "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." *Edwards v. Zenimax Media, Inc.*, No. 12-cv-00411, 2012 U.S. Dist. LEXIS 137520, *7 (D. Colo. Sept. 25, 2012) (quoting Fed. R. Civ. P. 23(d)(1)(D)). Courts have held that a motion to strike class allegations made pursuant to Rule 23(c)(1)(A) and (d)(1)(D) can be an appropriate device to determine whether a case will proceed as a class action. *See, e.g., Muehlbauer v. Gen. Motors Corp.*, 431 F. Supp. 2d 847, 870 (N.D. Ill. 2006).

### III.  ARGUMENT

#### A.  Plaintiff's Class Action Allegations are Barred by the Contract of Carriage

The Contract, which Plaintiff attaches to the Complaint and alleges governs the parties' relationship in this case, expressly bars class action lawsuits, providing in § 22 H:

> No Class Action – Any case brought pursuant to this Contract of Carriage, Frontier's Tarmac Delay Plan, or Frontier's Customer Service Plan may be brought in a party's individual capacity and not as a plaintiff or class member in any purported class or representative proceeding.

Compl., Ex. A § 22 H; Ross Dec., Ex. 1 § 22 H.[4] Plaintiff brings this lawsuit pursuant to the

---

[4] The class action bar language in § 22 H is the same in the version of the Contract that Plaintiff attaches to the Complaint and the version in existence when Plaintiff purchased his tickets in March 2020. Compl., Ex. A § 22 H; Ross Dec., Ex. 1 § 22 H.

4

Contract and does not allege that any portion of it is unenforceable, supporting that the "No Class Action" provision requires the striking of all class allegations. Moreover, under Colorado law the Class Action Bar is enforceable.[5]

When applying Colorado law, courts begin with the presumption that a contract provision is enforceable. *See Allen v. Pacheco*, 71 P.3d 375, 378 (Colo. 2003) ("We will enforce the agreement as written unless there is an ambiguity in the language; courts should neither rewrite the agreement nor limit its effect by a strained construction."). Plaintiff does not allege in the Complaint that the Contract contains any ambiguity.

A contract that favors one party more than another does not eliminate the presumption of enforceability. *See, e.g., Thurmon v. Skipton*, 403 P.2d 211, 214 (Colo. 1965) ("Courts will enforce a contract as made, regardless of whether it is an improvident one from the standpoint of one of the parties."); *Sedalia Land Co. v. Robinson Brick & Tile Co.*, 475 P.2d 351, 354 (Colo. Ct. App. 1970) ("The general rule is that, if a party enters into a contract or any other legal transaction with sufficient mental capacity to understand it, and not under the influence of fraud, coercion or imposition, the courts will not relieve him of the consequences of his act on the sole ground that the bargain is improvident as to him."). "[T]he party seeking to avoid application of a contractual provision bears the burden of showing that it is unconscionable." *Bonanno v. Quizno's Franchise Co., LLC*, No. 06-cv-02358, 2009 U.S. Dist. LEXIS 37702, *56 (D. Colo. April 20, 2009) (enforcing contractual class action bar). Plaintiff does not allege in the Complaint that any

---

[5] The Contract contains a choice of law provision that requires application of Colorado law: "This Contract of Carriage will be governed by and construed in accordance with the laws of the United States of America and the State of Colorado without regard to conflict of law principles or law." Compl., Ex. A § 22 H; Ross Dec., Ex. 1 § 22 H.

provision in the Contract is unconscionable.

### 1. Federal Aviation Law Does Not Preclude the Class Action Bar in the Contract

The Contract's class action bar is not prohibited by Federal Aviation Regulations. Specifically, 14 C.F.R. § 253.2 provides that an airline's contract of carriage "applies to all scheduled direct air carrier operations" in interstate air transportation, and "applies to all contracts with passengers, for those operations." A contract of carriage commences when a passenger has purchased the air transportation. 14 C.F.R. § 399.88(a). Airlines are permitted to incorporate contracts of carriage into passengers' tickets or other written instruments, 14 C.F.R. § 253.4(a), and the incorporated terms may include "[c]laims restrictions." 14 C.F.R. § 253.5(b)(2). The Federal Aviation Regulations do not contain any prohibition against class action bar provisions in airlines' contracts of carriage. *See* 14 C.F.R. § 1.1, *et seq.*

### B. Even if Plaintiff Was Not Contractually Precluded from Pursuing a Class Action, He Does not Satisfy Rule 23(b)

Even if the Contract did not preclude Plaintiff's pursuit of a putative class action, his class action allegations would still be unsustainable. As a threshold issue, even assuming, *arguendo*, that Plaintiff sufficiently pled the four Rule 23(a) requirements for class certification, he fails to satisfy at least one of the categories in Rule 23(b). Fed. R. Civ. P. 23(b).

### 1. Plaintiff Does Not Plead a Rule 23(b)(1) or (2) Class Action

Although Plaintiff seeks certification under Rule 23(b)(1), (2), or (3), Compl. ¶¶ 37, 41, 46, 47, the factual allegations in the Complaint make clear that this case is about individualized, money damages that fall under Rule 23(b)(3). *See, e.g.,* Compl. ¶ 37 (defining putative class as persons "who were not provided a refund") and ¶ 49 (explaining that sole cause of action is a "claim for breach of contract damages or, in the alternative, specific performance of the contract's

refund terms"). Hence, certification under Rule 23(b)(1) or (2) is inappropriate. *Corley v. Entergy Corp.*, 222 F.R.D. 316, 320-23 (E.D. Tex. 2004). *See also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011); *Boughton v. Cotter Corp.*, 65 F.3d 823, 827 (10th Cir. 1995) ("The trial judge understood that injunctive relief was requested and that certification of a class under such circumstances was legally permissible under Rule 23(b)(2), but nevertheless decided that it was not appropriate to certify a class under that rule where the relief sought was primarily money damages."); *Clark v. State Farm Mut. Auto. Ins. Co.*, 245 F.R.D. 478, 485-86 (D. Colo. 2007) ("The predominant-relief inquiry . . . allows courts to ensure that insignificant or sham requests for injunctive relief do not provide cover for Rule 23(b)(2) certification of claims that are brought essentially for monetary recovery."); *Friedman v. Dollar Thrifty Auto. Group*, 304 F.R.D. 601, 614 (D. Colo. 2015); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 986-87 (9th Cir. 2011).

**1.  Plaintiff's Factual Allegations Demonstrate that Individual Issues will Predominate, and He Cannot Meet His Burden to Demonstrate that Common Questions will Predominate Under Rule 23(b)(3)**

This Court should strike Plaintiff's class action allegations because he cannot meet his burden of satisfying the requirements of Rule 23(b)(3). Rule 23(b)(3) permits a class action to be maintained if two requirements are met: (1) common questions of law or fact must predominate over any questions affecting only individual members; and (2) a class resolution must be superior to other available methods for fairly and efficiently adjudicating the controversy.[6] "The Rule

---

[6] This Court need not address threshold requirements under Rule 23(a) or Rule 23(b)(3)'s requirement of superiority because Plaintiff has not met burden of showing common questions predominate. *Moua v. Jani-King of Minn., Inc.*, No. 08-4942, 2010 U.S. Dist. LEXIS 23462, *6-7 (D. Minn. Mar. 12, 2010).

23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Moua*, 2010 U.S. Dist. LEXIS 23462, *7. "In examining this requirement, the Court is to conduct a limited preliminary inquiry, looking behind the pleadings to determine whether, given the factual setting of the case, if the plaintiff's general allegations are true, common evidence could suffice to make out a prima facie case for the class." *Id.* (internal quotations and ellipsis omitted). "This necessarily requires an examination of the underlying elements necessary to establish liability for plaintiffs' claims, and the predominance standard is satisfied only if those elements can be proven on a systematic, class-wide basis." *Id.* (internal quotations and omitted).

In this case, Plaintiff alleges a breach of contract claim, the elements of which are: (1) existence of a contract; (2) performance by plaintiff; (3) non-performance by defendant; and (4) damages. *Tatten v. Bank of Am. Corp.*, 912 F. Supp. 2d 1032, 1041 (D. Colo. 2012). One contract is at issue here, Frontier's Contract. However, as noted above, different versions exist at different times, and the version that Plaintiff attaches to his Complaint post-dates the version in existence when Plaintiff purchased his tickets in March 2020. *Compare* Compl., Ex. A; Ross Dec., Ex. 1. Thus, for every purchaser, an individualized assessment is required to determine the version of the Contract that is at issue. While few changes exist between the version Plaintiff attaches to his Complaint and that in existence during his March 2020 ticket purchase, an individualized assessment is necessary to determine if the particular circumstances of each transaction implicate one of the provisions that is different. For example, § 18 of the Contract, "Failure to Operate on Schedule or Failure to Carry," contains different language in the two versions for § 18 E, "Schedule Change Prior to Day of Travel." *Compare* Compl., Ex. A § 18 E; Ross Dec., Ex. 1 § 18 E. Indeed,

8

someone who purchased multiple tickets at different times, *e.g.,* March 2020 and April 2020, could have different versions of the Contract relevant to different transactions.

Additional reasons show that the resolution of putative class members' breach of contract claims will require individualized inquiries that will predominate over common questions. For example, § 18 C, which addresses cancellations, makes refunds contingent on whether Frontier was able to rebook the passenger and, if not, whether the passenger has requested a refund. Compl., Ex. A § 18 C; Ross Dec., Ex. 1 § 18 C. Further, §18 E of the Contract, which addresses schedule changes, makes a refund contingent on whether Frontier has been able to rebook the passenger and whether an itinerary change was deemed "significant." Compl., Ex. A § 18 E; Ross Dec., Ex. 1 § 18 E. Thus, individual issues exist that are not capable of resolution on a class-wide basis. Some passengers may have been rebooked, had itinerary changes that were not significant, canceled their own flights, accepted credit, or not requested a refund, and each putative class member's individualized circumstances and relevant Contract version or versions at issue will dictate the member's and Frontier's contractual obligations, requiring separate, individualized inquiries.

Claims under the Contract, in particular § 18 C and E, also require individual inquiries beyond which passengers made refund requests and some of the other individualized inquiries noted above. This Court will have to determine on an individualized basis several other aspects, including but not limited to: (1) eligibility, *i.e.* who purchased the ticket, and is the claimant someone other than the ticketed passenger, who could potentially obtain relief, whether a gift card, rewards miles, or previous credit was used to purchase the ticket; (2) was a rebooking offered (and if so, whether to an original or equivalent destination); (3) did the passenger accept a reaccommodation (excluded in the Complaint from the class definition, Compl. ¶ 38) or travel

9

credits; and (4) inquiries within inquiries such as (a) what was the originally ticketed schedule; (b) what was the alternative schedule offered in a rebooking; (c) what other alternatives existed to get to the same destination or equivalent destination; (d) whether the trip was non-stop or had one or more layovers; (e) whether the trip was scheduled to be one-way or roundtrip; (f) if the trip was scheduled to be roundtrip, how long the trip was supposed to be, whether one or both flights were cancelled and subject to rebooking, and the impact on the total planned time to be spent in the destination city; and (g) whether Frontier logged or otherwise memorialized any determinations it made about whether a schedule modification was "significant."

Given the foregoing, common questions of law or fact do not predominate over any questions affecting only individual members. The determinations necessary for the proposed class are not sufficiently cohesive to warrant adjudication by representation in a class action, and it is appropriate for this Court to "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." *Edwards*, 2012 U.S. Dist. LEXIS 137520, *7. This Court should accordingly strike the class action allegations.

### 1. The Class Allegations Must be Stricken because the Class Definition Includes Class Members who Lack Article III Standing to Sue

Plaintiff's class allegations must be stricken because the class definition inherently and improperly encompasses passengers who were not entitled to cash refunds and therefore lack standing. Article III of the United States Constitution requires that a party have standing to bring a lawsuit. USCS Const. Art. III, § 2, Cl 1. One of the three requirements for standing is the existence of an injury-in-fact. *See Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 180-181 (2000). Actual economic damages can satisfy the injury-in-fact requirement, *Sierra Club v. Morton*, 405 U.S. 727, 733-34 (1972), and can be satisfied when a

10

plaintiff properly alleges a "particularized breach of contract," *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1551 (2016) (Thomas, J., concurring).

Plaintiff brings a putative class on behalf of himself and others, complaining of money damages due to Frontier's alleged failure to provide a refund. He defines his putative class as "[a]ll persons in the United States who purchased tickets for travel on a Frontier Airlines flight scheduled to operate from March 1, 2020 through the date of a class certification order, whose flight(s) were canceled by Frontier, and who were not provided a refund." Compl. ¶ 37. *See also* Compl. ¶ 49 (explaining that sole cause of action is a "claim for breach of contract damages or, in the alternative, specific performance of the contract's refund terms").

Plaintiff's proposed class definition is so broad that it inherently includes passengers who cancelled their flights voluntarily before Frontier did, who did not request a refund from Frontier as required, who willingly accepted vouchers from Frontier in lieu of a cash refund, and who purchased their air transportation using non-cash means and who are therefore not entitled to a cash refund, to name just a few. Passengers in any of these categories are *not* entitled to cash refunds under the Contract and therefore lack any justiciable damages. Therefore, Frontier could not have breached its Contract in refusing to provide cash refunds to such passengers and Plaintiff cannot allege an actionable breach of contract for such putative class members, because they have no standing.

Despite the number of possible circumstances that exist in which passengers are not entitled to refunds and where Frontier accordingly could not have breached its Contract, the only exclusion Plaintiff includes in his class definition are passengers who were reaccommodated on other flights to their destinations. Compl. ¶ 38. The deficient inclusion of putative class members with no

11

Article III standing further supports the striking of Plaintiff's class allegations.

## IV.   CONCLUSION

For the foregoing reasons, Frontier respectfully requests that the Court strike the class allegations contained within Plaintiff's Complaint pursuant to Rule 23(c)(1)(A) and (d)(1)(D).

### Statement Regarding Oral Argument

Oral argument is requested, to the extent a hearing will assist this Court in evaluating the arguments submitted.

DATED this 17th day of June, 2020.

Respectfully submitted,

WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP

By: /s/ Jason D. Melichar
Jason D. Melichar, Esq.
R. Joseph Isert, Esq.
1225 17th Street, Suite 2750
Denver, CO 80202
(303) 572-5300
(303) 573-5301 (fax)
jason.melichar@wilsonelser.com
joe.isert@wilsonelser.com

William J. Katt, Esq.
740 N. Plankinton Avenue, Suite 600
Milwaukee, WI 53203
(414) 276-8816
(414) 276-8819 (fax)
william.katt@wilsonelser.com

Patrick J. Kearns, Esq.
401 West A Street Suite 1900
San Diego, CA 92101
(619) 321-6200
(619) 321-6201 (fax)
patrick.kearns@wilsonelser.com

936903v.2

David M. Ross, Esq.
1500 K Street, NW, Suite 330
Washington, D.C. 20005
(202) 626-7660
(202) 628-3606 (fax)
david.ross@wilsonelser.com

*Attorneys for Defendant Frontier Airlines, Inc.*

**CERTIFICATION OF COUNSEL**

Frontier's counsel certifies that on June 16, 2020, counsel for Frontier conferred with Plaintiff's counsel regarding the relief sought in this Motion, and did not obtain consent to the relief requested herein.

By: /s/ Jason D. Melichar
Jason D. Melichar, Esq.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of June 2020, a true and correct copy of the foregoing was filed with the Court and served via CM/ECF on the following:

| | |
|---|---|
| Hassan A. Zavareei, Esq.<br>Annick Marie Persinger, Esq.<br>TYCKO & ZAVAREEI LLP<br>1828 L Street NW, Suite 1000<br>Washington, DC 20036<br>Telephone: (202) 973-0900<br>Facsimile: (202) 973-0950<br>Email: hzavareei@tzlegal.com<br><br>Jeff Ostrow, Esq.<br>Jonathan M. Streisfeld, Esq.<br>Joshua R. Levine, Esq.<br>Daniel Tropin, Esq.<br>KOPELOWITZ OSTROW FERGUSON WEISELBERG GILBERT<br>1 West Las Olas Blvd. Suite 500<br>Fort Lauderdale, FL 33301<br>Telephone: (954) 525-4100<br>Facsimile: (954) 525-4300<br>Email: streisfeld@kolawyers.com<br>ostrow@kolawyers.com<br>*Counsel for Plaintiff* | Melissa S. Weiner, Esq.<br>PEARSON, SIMON & WARSHAW, LLP<br>800 LaSalle Avenue, Suite 2150<br>Minneapolis, Minnesota 55402<br>Telephone: (612) 389-0600<br>Facsimile: (612) 389-0610<br>Email: mweiner@pswlaw.com<br><br>Daniel L. Warshaw, Esq.<br>PEARSON, SIMON & WARSHAW, LLP<br>15165 Ventura Boulevard, Suite 400<br>Sherman Oaks, CA 91403<br>Telephone: (818) 788-8300<br>Facsimile: (818) 788-8104 |

By: /s/ Jason D. Melichar
Jason D. Melichar, Esq.

936903v.2